STONE–ORDEAN–WELLS CO., RESPONDENT, v. STRONG ET AL., APPELLANTS.

(No. 6,986.)

(Submitted March 6, 1933. Decided March 28, 1933.)

[20 Pac. (2d) 639.]

*Mr. Ralph J. Anderson,* for Appellants, submitted a brief;
*Mr. Aaron Shull,* of Counsel, argued the cause orally.

24

*Messrs. Murch & Wuerthner* and *Mr. E. K. Matson,* for Respondent, submitted a brief; *Mr. Clarence W. Murch* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an action wherein plaintiff below, respondent here, sought to have set aside certain transfers of real estate made by H. E. Strong and Hazel L. Strong, his wife, defendants below, to the other defendants, Moore Land Company and R. L. Hunter, appellants here, and to have the property so transferred subjected to the lien of a judgment of respondent,

entered against appellants Strong in the district court of Cascade county and docketed in Fergus county, wherein the land is located.

Plaintiff's complaint alleged that H. E. Strong and his wife, Hazel L. Strong, were indebted to plaintiff on a promissory note in the sum of $1,375.83 and interest; that plaintiff on July 25, 1928, instituted action on the note in the district court of Cascade county, and on January 30, 1929, obtained judgment by default in the total sum of $1,611.72, and that plaintiff was at the time of the institution of this action still the owner and holder of the judgment; that at the time of the commencement of plaintiff's original action, the defendants Strong were managers, owners and in full control of the defendant Moore Land Company, and the owners of the entire issued capital stock of that corporation; that when plaintiff commenced its action on the note, the defendant H. E. Strong was the owner in fee simple of certain interests in real estate in Fergus county, Montana, being a part interest in some lots in the town of Moore and a whole interest in some other lots in the town of Moore; that the Strongs, on July 2, 1928, at the time they were obligated and indebted to plaintiff on the promissory note, and with intent to cheat and defraud plaintiff, and without consideration, sold and transferred certain of said real estate to the defendant R. L. Hunter, and on January 23, 1929, a few days prior to the time plaintiff obtained its original judgment, did fraudulently transfer and convey certain of the other real estate to Moore Land Company, a corporation.

That on February 21, 1929, plaintiff had execution issue to the sheriff of Fergus county with instruction to levy on personal property of the defendants; that the execution was returned by the sheriff indorsed as wholly unpaid and unsatisfied; that on the second day of April, 1929, another execution was issued on the judgment and likewise directed to the sheriff of Fergus county with instruction to levy on any property of the defendants Strong that he could find and locate; that on the twenty-fifth day of April, 1929, that execution was returned by the sheriff wholly unpaid and unsatisfied, and with

the further indorsement that "he [H. E. Strong] advised me that neither he or his wife, Hazel L. Strong, had any property that could be levied upon; and I further certify that I am unable to find any personal property within Fergus county belonging to H. E. Strong and Hazel L. Strong but what is pledged or chattel mortgaged."

That on the eighth day of January, 1930, another execution was issued at the direction of plaintiff, and on the twenty-first day of that month this execution was returned by the sheriff with a return reciting that the sheriff had on January 17, 1930, levied said execution by attaching all the right, title and interest of the defendants Strong in and to the real estate mentioned, and which real estate was standing in the names of the defendants Moore Land Company and R. L. Hunter on the records of Fergus county. The sheriff also made further return on the execution to the effect that the same was wholly unpaid and unsatisfied.

Plaintiff alleged that by virtue of the last execution and the levy of the same, it obtained a specific lien on all of the real estate, and that after diligent search and inquiry, plaintiff could not ascertain or discover any other property of defendants Strong, and therefore could not satisfy its judgment; that defendants divested themselves of their said property in order to cheat, defraud, hinder and delay their creditors, and particularly the plaintiff; and that the conveyances made to Moore Land Company and R. L. Hunter were made by the Strongs for the purpose of placing their property beyond the reach of their creditors and particularly to avoid the process of the law. Plaintiff demanded that the conveyances made to Moore Land Company and to Hunter be set aside as fraudulent, and that the real estate be subjected to the lien of its judgment.

The defendants answered, admitting some of the allegations of the complaint, including the entry of the judgment, and admitting that Strong owned the real estate previous to the transfers, but denying that the transfers were fraudulent. The answer also admitted, by affirmative allegation, that "the defendant H. E. Strong advised Guy Tullock, sheriff of Fergus

county, that neither he nor his wife had any property in that county.''

The case was tried by the court with a jury acting in an advisory capacity. Before any testimony was taken, an objection was made to the introduction of evidence on the ground that the complaint did not state a cause of action, and upon the further ground that there was no lien existing at the time of the commencement of the action, by reason of the return of the sheriff without sale on the execution. This objection was overruled. Motion was also made by defendants, after the evidence was all in, to take the cause from the jury. This motion was denied.

The court submitted to the jury four findings of fact, which, with the answers, are as follows:

''1. Did the conveyance of the defendants Strong to the Moore Land Company constitute an honest transaction with good consideration? Answer. No.

''2. Did the conveyance of the defendants Strong to R. L. Hunter constitute an honest transaction with good consideration? Answer. No.

''3. Did the defendants Strong convey the interest in the store and hotel property to the defendant Moore Land Company in consideration of the funds received from sale of the quarter section of the Moore Land Company to J. A. Johnson? Answer. No.

''4. Did the defendants Strong convey the property referred to as the residence to the defendant Hunter in consideration of a debt honestly owing to the defendant Hunter by the defendant Harry Strong? Answer. No.''

The defendants excepted to the findings and made appropriate motions for judgment in their favor. The court denied the motions and adopted the findings of the jury and entered judgment in favor of the plaintiff. The judgment ordered that the deeds to the Moore Land Company and R. L. Hunter be canceled and the property described therein subjected to the lien of the judgment and directed issuance of execution accordingly. From this judgment the defendants appealed and

assert ten specifications of error. Only three of these are important and are stated in appellants' brief as follows:

"1. That by reason of the return of the sheriff on the execution under which a levy was made on the property conveyed, without sale, the lien created by the levy was abandoned or lost prior to the commencement of this action and, therefore, the court was without jurisdiction.

"2. That the evidence in this case wholly fails to prove insolvency of the defendants Strong, in that the only proof of insolvency was the returns of the sheriff, and that they were insufficient in that none of them discloses the fact that the sheriff had made any search for the property of the defendants and he nowhere certifies that he was unable to find other property.

"3. That the evidence clearly preponderates in favor of a finding that there was an adequate consideration for the conveyance of the residence property by the defendants Strong to the defendant Hunter."

It will be observed that appellants claim that no specific lien attached to the property involved by reason of the fact that the lien was predicated upon an execution, rather than upon an attachment. There is no merit in this contention. This court has recognized such specific procedure in numerous cases. (*Wheeler & Motter Merc. Co.* v. *Moon,* 49 Mont. 307, 141 Pac. 665; *Rowley* v. *Mullen,* 74 Mont. 283, 240 Pac. 374; *Roman* v. *Albert,* 81 Mont. 393, 264 Pac. 115; *Nelson* v. *Wilson,* 81 Mont. 560, 264 Pac. 679; *Edenfield* v. *Seal Co.,* 83 Mont. 49, 270 Pac. 642; *Security State Bank* v. *McIntyre,* 71 Mont. 186, 228 Pac. 618; *National Bank of Anaconda* v. *Yegen,* 83 Mont. 265, 271 Pac. 612; *Harrison* v. *Riddell,* 64 Mont. 466, 210 Pac. 460; *Springhorn* v. *Springer,* 75 Mont. 294, 243 Pac. 803; *Fousek* v. *DeForest,* 90 Mont. 448, 4 Pac. (2d) 472.) The authority therefor is contained in section 9424, Revised Codes 1921, wherein it is provided, among other things, that "shares and interests in any corporation or company, and debts and credits, and all other property, both real and personal, or any interest in real or personal property,

and all other property not capable of manual delivery, may be attached on execution, in like manner as upon writs of attachment.''

In this case the sheriff, under one of the executions, pursued the exact procedure provided by statute for the attachment of an interest in real estate owned by a defendant or defendants and standing on the records of the county in the name of a third person or persons. Here the third persons, grantees of the Strongs, were parties defendant in the action and are all bound.

Appellants further claim, however, that even though the lien might have attached under the procedure followed, it was abandoned and lost by reason of the fact that the sheriff did not hold a sale, but did make a second and further return *nulla bona*. There is ample authority for the procedure followed. In fact, many of the cases decided by this court have recognized and approved that procedure. In such actions no sale upon execution is required to be made, and attachment before judgment is not an exclusive mode of procedure. (*Northern Montana State Bank* v. *Collins*, 67 Mont. 575, 216 Pac. 330; *Koopman* v. *Mansolf*, 51 Mont. 48, 149 Pac. 491; *Edenfield* v. *Seal Co.*, supra.)

Appellants' second specification of error is based upon the alleged insufficiency of the evidence. It is contended that there was not sufficient proof of the insolvency of the defendants Strong. In an action of this kind the plaintiff must show that the grantor was insolvent at the time of the transfer, or that he did not reserve sufficient property subject to immediate seizure to satisfy his then existing debts. (*Ferrell* v. *Elling*, 84 Mont. 384, 276 Pac. 432; *National Bank of Anaconda* v. *Yegen*, supra; *Security State Bank* v. *McIntyre*, supra.)

The evidence relative to the insolvency consisted of the statement of Strong that neither he nor his wife had any property that could be levied upon, and the returns of the sheriff that he had been unable to find any personal property belonging to the defendants upon which he could levy. Appel-

lants contend that under the ruling in *Dick* v. *King*, 80 Mont. 40, 257 Pac. 1022, the statement by Strong to the sheriff was inadmissible. However, the pleadings of the plaintiff here set forth the statement and the answer of the defendants admitted it specifically. This being true, it follows that no error was involved in the admission of the statement of H. E. Strong.

In *Hart-Parr Co.* v. *Schafer*, 73 Mont. 429, 236 Pac. 675, 677, the court said: "It appears to be the rule, established by a long line of decisions, that the return of an execution unsatisfied is sufficient proof of the exhaustion of the legal remedy; that such a return establishes, prima facie, the insolvency of the debtor; that he has no other property out of which the execution could be made, and entitles the execution creditor to invoke the aid of a court of equity to set aside a conveyance made in fraud of his rights."

It is true that in the instant case the sheriff did not recite that he had made due and diligent search; however, his statement that he was unable to find any personal property presupposes a search, and, in the absence of any evidence to the contrary, it is fair to presume that he made one. It may be presumed that an officer did his duty. (Sec. 10606, subd. 15, Rev. Codes 1921; *Burgess* v. *Lasby*, 91 Mont. 482, 9 Pac. (2d) 164.)

It is true that the returns recited that the sheriff had been unable to find personal property belonging to the defendants, upon which he could levy. It was the duty of the sheriff to first have resort to personal property. (Sec. 9417, Rev. Codes 1921.)

Appellants contend that there might have been real property subject to execution upon which the sheriff made no attempt to levy. We might note that the record in the *Hart-Parr Co. Case*, supra, discloses that the return made in that case related solely to personal property. However, it is unnecessary at this time to decide whether these returns alone would be sufficient to make out a prima facie showing of insolvency, for here we have the admission of the defendant that he had no property in the county subject to execution. The court was

warranted in finding, as it did find, that the defendants were insolvent..

The third assignment is based upon a claim that there was █ consideration for the transfer to R. L. Hunter, Apparently, appellants abandoned the idea that there was consideration for the transfer to the Moore Land Company. We might, therefore, refrain from further discussion of the transfer to that company, but for the fact that the record shows a close relationship between all the defendants and discloses a series of interrelated transfers. H. E. Strong, the husband, was the president of the bank; Hazel L. Strong was his wife, and R. L. Hunter was the cashier, and partner of H. E. Strong. The three were the owners of all the stock of the Moore Land Company. The case was tried on the theory that all the transactions were in furtherance of the same purpose. Therefore all of them should be considered together.

The evidence showed that the defendant H. E. Strong was one of the incorporators of the Moore Land Company; that he owned seventy-three of the seventy-five issued shares of the corporation; that the officers of the company were the defendants—Hunter was president, Strong vice-president and Mrs. Strong secretary—at the time the deeds were made by the Strongs. Hunter and Mrs. Strong owned but one share each. Strong owned the balance of the Moore Land Company stock, and was evidently the dominant personality in the group.

Strong tried to explain the consideration for the transfer of the property to the corporation. He testified that about 1918 the corporation acquired a quarter-section of land; that the land was sold to one J. A. Johnson on some sort of contract not clearly explained, and that afterward the proceeds of the sale went to him instead of to the corporation; that the transfer of the property in question was made to the corporation without a concurrent consideration, but in payment to the corporation of the amount he claimed was due by reason of his having collected and held the proceeds of the land.

It is impossible to obtain a clear understanding of the transaction from the record. The jury said, in answer to the

interrogatories submitted by the court, that the transaction was not an honest one, and that the property sought to be impressed with the lien in this action was not transferred to the land company as a result of the Johnson deal. Certainly it cannot be said that the record, and particularly the testimony of Strong, could overcome the findings of the jury, which were adopted by the trial court. Strong's testimony, as it appears in the cold record, is fragmentary, uncertain and evasive. Had the jury found the other way, after seeing the witness upon the stand and hearing the testimony, there might be some justification for disregarding their conclusion, but the cold record discloses the reason for the jury's findings.

The transfer made to Hunter was explained by himself and by Strong. They testified that Hunter conducted a fire and hail insurance business through or in connection with the bank, and received certain commissions which they said aggregated something like $3,600; that these commissions were really the property of Hunter, but Hunter allowed Strong to take them and to that extent the latter became indebted to him; that no books were kept on these transactions except as they appeared in the books of the bank of which both Strong and Hunter were officers; that it was impossible to ascertain the exact amounts due; and that the transfer of the property made to Hunter was also without concurrent consideration but for the purpose of paying Hunter the amount so due him. Neither one of them produced any account or record upon which to base the claim of obligation due Hunter from Strong. They said the deed was made and the property transferred in payment of whatever obligation there was. After the deed to the property was made to Hunter, Strong continued to occupy the property and apparently there was no transfer of possession. The evidence as to the Strong-Hunter obligations was also vague and uncertain.

The jury made findings against the defendants and the court having adopted them and having entered judgment thereon, we find ourselves unable to say that such findings should be set aside and the judgment reversed. Certainly the evidence does

34

not preponderate against the findings and without such apparent preponderance of evidence we are bound by well-established rules often announced by this court and must sustain the judgment.

No error appearing, the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES ANGSTMAN and MATTHEWS and HONORABLE A. J. HORSKY, District Judge, sitting in place of MR. JUSTICE ANDERSON, disqualified, concur.